## Case No. 3,224.

### In re CORBIN.

[1 MacA. Pat. Cas. 521.]

Circuit Court, District of Columbia. April Term, 1857.

PATENTS—NOVELTY AND USEFULNESS—COMPOSITIONS OF MATTER—EQUIVALENTS—ARTIFICIAL HONEY.

[1. An artificial honey, composed of specified ingredients in fixed proportions, constituting a new composition of matter, which closely resembles honey in all respects, is not deleterious, and can be made and supplied at half the cost of genuine honey, must be regarded as a "useful" article, in the sense of the patent law (Act 1836, c. 357), and a patent should not be denied on the ground that it would operate to aid in deceiving the public.]

[2. An artificial honey, which is new, in the arranged and ascertained proportions of its various ingredients, and which constitutes a useful product, cannot be denied patentability on the ground that it is a syrupy composition, and

the same in principle as the great variety of syrups in common use.]

[3. Ingredients arranged in ascertained proportions, so as to form a composition closely resembling honey, cannot be considered as mere equivalents of the elements contained in genuine honey, although the latter have been separated by analysis so that they may be known by all; it not being shown that such analysis discloses any fixed proportions, as in the artificial article.]

Appeal from refusal to grant patent.

At the hearing before the judge, Examiner Gate was sworn and was asked a single question, as follows: Question. "Please examine the proportions of the ingredients as set forth in the specifications, and state whether or not the product thereof is cheaper than honey." Answer. "I have so examined, and the product would be cheaper, inasmuch as it is made up substantially of sugar, water, and honey; it would be cheaper in proportion as water and sugar are cheaper than honey."

The patent issued to Corbin and Martlett May 12th, 1857, No. 17,264.

Everett & Pollok, for appellants.

MORSELL, Circuit Judge. In their amended specification, the applicants say: "What we claim as our invention, and desire to secure by letters-patent as a new product or composition of matter, is our artificial honey, composed of the within-enumerated ingredients or their equivalents, combined with each other, substantially in the manner herein set forth." In the description of the ingredients they say: "Our artificial honey is composed of four pounds of sugar, one pint and a half of water, five grains of rosin or its equivalent antiseptic, two drams of butter (or other pure eatable oil), one and a half drams of cream of tartar, two drams gum arabic or gum senegal, one and a quarter pounds of honey, eight drops of essence of peppermint, and one dram isinglass. These ingredients are combined with each other in the following manner, viz: The sugar and water are incorporated with each other and raised to a boiling temperature; then the butter and rosin are melted together and thoroughly incorporated with the syrup formed by the union of the sugar and water; then boil the aforesaid mixture for the space of ten minutes or thereabouts; then add thereto the gum arabic and the isinglass in a mucilaginous state, and the cream of tartar, and boil the said increased mixture for the space of ten minutes or thereabouts; then add the honey to the mixture, and after boiling the same for the space of five minutes or thereabouts, remove from the fire, and when nearly cold, add the essence of peppermint and thoroughly incorporate it with the entire mass;—when the mixture will present the appearance of pure honey, and will have nearly the same flavor."

There appear to have been several actions by the office in relation to a decision upon

the subject of this claim previous to the last and final decision of the commissioner. The first appears to have taken place on the 30th of April, 1855, in the form of a letter addressed to the said Corbin and Martlett, which begins by saying, "your claim for a factitious honey, made of honey, sugar, water, rosin, cream of tartar, peppermint essence, and gum has been duly examined and refused. 1. The compound, as a composition of matter, is admitted to be new. Is it, therefore, to be admitted as a principle that everything which is new is patentable? By no means. It must be useful as well as new. 2. What is the gist of the invention? It is the manufacture of an imitation honey —a composition which closely resembles the real article in thickness or consistency, in color, in taste, and in flavor, so that persons may not be able to distinguish the spurious from the genuine article. The resemblance is in fact so perfect that, judging from the appearance alone, it would be difficult to say which is genuine. It is argued, by way of objection, under such circumstances, that to grant a patent would be to make the patent law at once the source and protector of a system of deception that, carried out in all its bearings, would be productive of much evil, and do great injury to the commerce of the chemical dietetical arts, and destroy confidence in the various articles offered for public and private use." The commissioner proceeds, and says: "The ground which the office feels obliged to take is, that the factitious honey, although admitted to be a new composition of matter, so far as known to this office, is not useful in the patentable sense of the term, but absolutely hurtful to the progress of the useful arts and to the community, and cannot be serviceable to any but the patentee in case he should obtain a patent; for even when the patent should expire, nobody would think of using, as a diet, the mixture of the drugs, &c., instead of pure honey," &c. How, then, could there be any danger of deception, even if it could be supposed to be a deception, and not a useful article. The second is also in the form of a letter addressed to the same persons, dated the 13th June, 1855. And after referring them to a number of authorities on the subject of manufacturing syrups of various kinds, the commissioner says: "So long as these facts exist, and are recorded in books, there is no patentable novelty involved in merely selecting materials that have not been before mingled with sugar or honey in syrups. The office, therefore, arrives at the same conclusion as it did in the first examination, although by a different route, viz., that your syrup of honey presents nothing patentable; that while the first letter of rejection based its action mainly on the want of a proper consideration for the grant of letters-patent, from the fact that your invention, when thrown open to the public would be of no value, so now it shows, by

reference to the various directions given herein for preparing all sorts of honeys and syrups—flavored, acidified, and essenced— that the mere adding of a new flavor, new essence, or new salt should not dignify such syrup by the grant of letters-patent. The claim is hence refused, as before."

For the purpose of a final action or decision, the subject was referred to two examiners—Mr. Foreman and Mr. Langdon— and they have made separate reports differing very essentially on the subject—the former sustaining the views of Doctor Gales, and which was accepted and affirmed by the commissioner in rejecting the application of the appellant. This decision is dated the 6th of August, 1855. In his report he says that "the decision of the chief examiner, as contained in the office letter of 13th of June, should be sustained, in which the composition is regarded as a syrupy mixture or an adulteration of honey. The composition of honey is well known, the elements having been separated by analysis, a knowledge of which is open to all. In reproducing the imitated article, the applicant uses, together with some real honey, various substances, which must be regarded as fully the equivalents of those composing the product of the bee. It is not claimed that any invention is used in determining or selecting his ingredients, nor any difficulty overcome in causing them to unite. If the applicant had used any substance in this composition having some property peculiarly fitted for it, and which he had been the first to discover, some merit might be recognized in the application; but all the articles employed are really or substantially found in honey." At the foot of this report the acting commissioner says: "The undersigned concurs in the above views, and affirms the action of the examiner rejecting the application." Mr. Langdon in his report says: "The directions of the acting commissioner are that the revision of the examiner's action shall be based entirely upon the record of the case. Looking at it, therefore, solely in this light, it seems that the main, and perhaps only, objections upon which the office now stands are two: First. That syrups have been made of various flavors and from various ingredients, and that a mere novelty in either of these respects, or, in other words, the making a new syrup, is not patentable. Second. That the ingredients described are, after all, the same or substantially the equivalents of those given by analysis of honey itself. To these it is replied: First. That honey itself is not a syrup, nor used for the general purposes of syrups; and it is admitted that the imitation is so excellent that few would detect it. Moreover, it does not appear that the compound of the applicant is intended for use as a syrup, but, on the contrary, as a substitute for honey itself. It is believed that syrups, as a general thing, are one and the same compound, differing

chiefly, if not entirely, in the flavoring added. But in this case the essence of peppermint, and not the honey, is the flavoring; and without the former the substantial character of the article would be in no respect changed. If the ingredients be changed beyond the mere substitution of equivalents, the article itself is a new compound. It does not, therefore, appear to me that the compound in question can be regarded as a syrup of a new flavor, but rather as an alleged improvement in another direction—an imitation of honey or a substitute for honey. And secondly. That if it were the exact ingredients of the genuine honey which are used in the substitute, and united in the same manner, or if they were equivalent ingredients, in the sense in which the word is employed in patent law, the resultant would not differ in any important respect from the real honey. If, on the other hand, while the appearance and palatable flavor of the honey is preserved, either the substitution of ingredients or a change in the process of compounding produces a cheaper or more healthy article of food, this article, or the composition of the article, would appear to me to be the legitimate subject of a patent. That it is cheaper, is manifest. Of its effect upon the stomach, I do not pretend to be able to judge; but it is believed that the assertions of the applicant upon this point are not denied, and from some months' use of such an article myself I am inclined to credit the position. If, therefore, the present action is to be based exclusively on the record of the case, it appears to me that liberal construction of the law would not only authorize, but constrain, the issue of a patent."

From the decision of the commissioner, as before said, the appeal has been taken; and the said Corbin and Martlett have filed five reasons of appeal. The first is founded on and in the words of the seventh section of the act of congress of 1836, c. 357 [5 Stat. 119]. The second is because satisfactory references were not given, and arguments and assertions were used void of foundation and not justified by the science of chemistry nor by the practical knowledge of men acquainted with the peculiar art. Third. Because of inconsistencies in the three actions of the office. Fourth. For error as to the utility of the invention and its liability to injure the health and well-being of society. Fifth is general, for error in concurring in the report of one of the examiners and not noticing the report of the one who was favorable to them. This appears to be the state of the case from the original papers and decision of the commissioner laid before me with the reasons of appeal. On the day and place appointed for the hearing of said appeal, the appellants appeared by their attorneys, and filed their argument in writing, and submitted said case.

The first reason substantially involves the consideration of all the material points in the case; that is, that part of the seventh section of the act of 1836 which points out and limits the power and duty of the commissioner and defines the rights of the applicants to which I refer. In the discussion of the objections, in order that they may be more clearly seen and distinctly understood, I shall separate what seems to be conceded from that which is contested. The prerequisites of the statute, such as petition, specification, oath of the party, specimen, &c., may be considered as all regularly complied with. So, as a whole, the composition is admitted to be new, and that nothing known to the office is analogous to or identical therewith. So, as to the proposed object of the invention, that it should be a substitute for the real honey. It is admitted that in thickness or consistency, in color, in taste, and in flavor it closely resembles the real article, so that persons may not be able to distinguish the spurious from the genuine article; that "the resemblance is in fact so perfect that, judging from the appearance alone, it would be difficult to say which is genuine."

Now, as the real, genuine honey is unquestionably esteemed a very useful article of diet and trade, and there is such a perfect resemblance between the factitious and the real, and also as the artificial can be made and supplied at all times for one-half the price less than the real, it is not easily to be conceived why it should not be deemed a new and useful manufacture of trade, and for that reason a patentable article; but, so far from that, the commissioner makes it a ground of objection; and the reason assigned is that granting a patent for it might give it a sanction and facility in imposing upon and deceiving the public by a factitious honey instead of the genuine article. This would seem to be a strange, unfounded fear, for in the specification, which would form a part of the description in the patent, the applicant has in the most solemn manner announced that their claim is for an invention of a factitious, not a real, honey, all the ingredients of which they have also set forth. In the latter part of the same report, want of consideration is stated as a further ground or reason, because it is alleged that after the expiration of the time for which the patent was granted nobody would think of using a diet or purchasing a drugged article of food—a mixture of the drugs, cream of tartar, rosin, &c. This seems to me to be at least a slight inconsistency; but I shall not rely on anything of that kind. The reply may be made as above stated, and also that the drugs used in the composition are of the most simple kind, and in very small proportions, without the least danger of a deleterious effect in the use of them in the combination. It is, therefore, improbable that there would be any such failure of consideration. It is further objected that

it is a syrupy composition; and I have been referred to a number of authorities to show the great variety of syrups as common, well-known things in constant use, and as being the same in principle with the invention of these applicants. It may be admitted that the simple syrup of sugar and water forms a part of the ingredients of this composition, but it by no means constitutes the principal part of the essential elements thereof. The invention claimed by the appellants as new and useful is their arranged, ascertained proportions of the ingredients with the product of the composition, and not any separate, particular parts.

In this connection may also be considered the additional objections raised in the last report, which purports to sustain the report of the chief examiner, and the one which the commissioner adopts as his final decision. The objection is because "the composition of honey is well known, the elements having been separated by analysis, a knowledge of which is open to all; that the substances used by the applicant, together with some real honey, must be regarded as fully the equivalents of those composing the product of the bee, and therefore no invention." I do not understand the commissioner as stating that in the analysis of honey alluded to any fixed proportions have been discovered as in this invention; nor have I been able to discover from the authorities furnished to me in this cause any one that has afforded me that information; and it must be admitted, I think, that, as the nature of honey depends upon the different kinds of flowers from which the bee extracts its substance, none such can be shown; but however that may be—that it is a knowledge open to all—honey is not the product of the invention of any man, and the truths and principles or laws, if known, are those of natural science, and have an existence antecedent to and independent of the operations of man; and therefore such knowledge can be no sufficient objection, because not embraced within the provisions of the section of law alluded to, which was intended only to act upon the embodiment of them when applied in a practical sense, and which with such clothing may become the subject of a patent, showing a useful purpose, and not having been before invented. The like objection, as in this case, might be raised to the imitation of iron, to a new application of steam, electricity, and the like instances, a number of which may be found mentioned in almost any book on patent law. It is, as before said, in the use of such principles, embodied for a useful, practical purpose, that the patent is asked for in this case.

I will now state one or two adjudged cases on patent law applicable to the points I have been discussing, and which, I think, will be sufficient to put at rest all the objections which have been made under the head of composition of matter. Curtis (section 104) states the law to be: "With regard to this class of subjects, it is sufficient to observe that the test of novelty must of course be, not whether the materials of which the composition is made are new, but whether the combination is new. Although the ingredients may have been in the most extensive and common use, for the purpose of producing a similar composition, if the composition made by the patentee is the result of different proportions of the same ingredients, or of the same and other ingredients, the patent will be good. The patentee is not confined to the use of the same precise ingredients in making his compound, provided all the different combinations of which he makes use are equally new." He refers to Ryan v. Goodwin [Case No. 12,186]. The opinion of the court in that case is better stated by the judge himself at page 514 in these words: "As to the first point, it is mainly a question of fact. It is certainly not necessary that every ingredient, or indeed that any one ingredient, used by the patentee in his invention should be new or unused before for the purpose of making matches. The true question is whether the combination of materials by the patentee is substantially new. Each of these ingredients may have been in the most extensive and common use, and some of them may have been used for matches or combined with other materials for other purposes; but if they have never been combined together in the manner stated in the patent, but the combination is new, then, I take it, the invention of the combination is patentable." In the case of Le Roy v. Tatham (decided by the supreme court of the United States) 14 How. [55 U. S.] 156, Judge McLean, in announcing the opinion of the court, says: "A principle in the abstract is a fundamental truth, an original cause, a motive. These cannot be patented, as no one can claim in either of them an exclusive right," &c. In another part of the opinion, speaking on the same particular subject, he says: "In all such cases the processes used to extract, modify, and concentrate natural agencies constitute the invention. The elements of the power exist. The invention is not in discovering them, but in applying them to the useful objects. Whether the machinery used be novel, or consist of a new combination of parts known, the right of the inventor is secured against all who use the same mechanical power, or one that shall be substantially the same."

In conclusion, I refer to the learned report of Mr. Langdon, one of the examiners appointed by the commissioner, on the matter of this case. The views he takes of the nature and principles of the invention are very strong, and not to be refuted. I would desire to notice it particularly for the experimental fact which he states, the truth of which no one dare deny; it is, that the composition produces a cheaper and more healthy

article of food. He says: "That it is cheaper, is manifest. Of its effects upon the stomach, I do not pretend to be able to judge; but it is believed that the assertions. of the applicants upon this point are not denied; and from some months' use of such an article myself, I am inclined to credit the position." Here, then, is knowledge derived from a practical source, and fully corroborates what I have said on this particular point.

These views have brought me to the conclusion that the decision of the commissioner is erroneous, and ought to be reversed.

---

CORBIN (HOPKINS & D. MANUF"G CO. v.). See Case No. 6.695.

CORBIN (PARKER v.). See Case No. 10,-731.

CORBIN (POST v.). See Case No. 11,299.

CORBIN (VAN BRUNT v.). See Case No. 16,-832.